Thank you, Your Honors. This appeal relates to the Chapter 7 trustee having obtained an order on a motion for reconsideration at the Bankruptcy Court level, denying the debtor her homestead exemption in the property. The basis was twofold. First, the debtor, in connection with the bankruptcy case, asserted that the property was hers. At the time that the Bankruptcy Court allowed the Chapter 7 trustee to proceed with the sale of that property, and at which time the Chapter 7 trustee made the decision to proceed with the sale of that property, the debtor then took the position that it wasn't her property. Why aren't they right that there's a lack of diligence because the trustee should have done a title search once there was that colloquy where Dye said she didn't know about the title, it's all messed up, and then Dye's lawyer said, no, everything's fine, she has title? Okay. The reason why is at the time when the debtor appeared at a 341A meeting of creditors, and she vocalized that title was messed up. There was also her counsel who was saying that it was his belief that the property was property of the estate. At that time, the trustee moved forward, didn't obtain a title report. In fact, the property was in the estate. I mean, he didn't say – he said something even then slightly equivocal at the end. I don't have it in front of me, but he didn't say that the – because everybody was confused because there were two different things going on. One was the estate and the other was the Cinderella Trust. And he – my recollection is that the lawyer even said at the end that he – something to the effect of, well, I'm not saying that a title company would recognize this. He recognized there was some issue. So even he, who was saying it's in the estate, wasn't saying it wasn't an issue. And, in fact, it was in the estate, as it turns out, because as a replicable trust, it was in the estate. Well, and these are the issues why we're here today, Your Honor. What – there was the issue with regard to the property. And it's clear that there was some issue with regard to who actually held title to the property, which came up later. Right. So sometime in the ensuing two years, the trustee should have gone and found out what the problem was. The reason why that wasn't done is, during that time, we were dealing with the exemption. And until there was a determination as to the exemption, it wasn't prudent to deal with the sale because, depending on the outcome of the exemption, there may not have been equity in the property for liquidation for the benefit of creditors. Now, the first exemption – Let me see if I understood that right. If it really was owned by the trust and not the bankruptcy estate, there'd be no exemption, right? No, that's – There'd be no exemptions. That's not – Disabled people and old people get them. That's not correct. It's not? No. The reason I say that is, because the property was in a revocable trust, California law provides – That was the next step. Because it's a revocable trust, it's treated as though it's not in a trust at all under California law, right? Well, no. It's treated as though it's a trust. However, the debtor is entitled to claim an exemption in that property. Now, the next step, which the bankruptcy appellate panel didn't make, is that while the trustee, under case law, is allowed to revoke the trust and gets those powers upon the bankruptcy filing, the problem is, when we filed that – when the bankruptcy case was filed and the property was in the name of the Cinderella Trust, or title was held to it, we couldn't proceed with the sale. And that was the October 28th hearing. And then we asked for a continuance to allow us to get – And this is the part where I got kind of stuck. Why couldn't – if it's a revocable trust and the authority to revoke – and the trustee is now in the shoes of the settlor, and that's the person who can revoke it, why don't you just revoke it? The reason is because the title, legal title held by the county of Los Angeles recorder's office – Okay. But you have the authority to change that, don't you? Yes, we do. Now, the problem is, in this particular case – and this is why this is important – is, in this particular case, the debtor interfered at every step. When we did get the order approving the compromise and requiring the trustee of the Cinderella Trust to reconvey the property, the debtor then filed with the county. First of all, none of this has to do with the original question of why it wasn't too late. I mean, why the – there wasn't a due diligence problem. There's not a due diligence problem, Your Honor, because we were dealing with the appeals. There were two separate motions that dealt with the Homestead exemption. And the first one, the debtor claimed that she was disabled. We then took the deposition of her doctor. The doctor said in her state and profession, she was not disabled. That matter was appealed to the Bankruptcy Appellate Panel, and then the Bankruptcy Appellate Panel affirmed the denial of that exemption. The debtor then filed an amended exemption saying she was married, and the person she was married to was over 65 years of age. We objected to that exemption, and the court denied our objection and said that the debtor is entitled to the $125,000 exemption at that time. We left that alone, and at that point, once we determined that the exemption was the $125,000, that is when the due diligence starts as to whether, A, the property, any issues with title, and, B, whether there's enough equity in that property above cost of sale and that debtor's exemption, which was finally allowed, to then determine whether there was equity for the benefit of creditors. I mean, we go forward in a bankruptcy case with the presumption that, in the end of the day, we'll be successful and there will be – What's newly discovered? I mean, everything that you've described up to now, it seems to me, would suggest that she does have that exemption. You're correct, Your Honor, and the reason this is different is, during that time we were dealing with the exemption, we never dealt with the issue of title to the property. We were dealing with the assumption that title was in the name of debtor, so we dealt with all the exemption issues. Once we dealt with the fact that the exemption was satisfied, we then saw that title actually was not held by the debtor. But that's the point. The point is that there was reason to think that the title wasn't in the name of the debtor at the outset, even from what the attorneys said. There was some problem with the title. And what I would propose to this Court is that if they review the 341A transcript – Wouldn't it have been much cheaper and faster, simpler, to check that out rather than going through two huge, complicated exemption proceedings first? How complicated was it to check the title as opposed to to go through two lengthy exemption proceedings? Well, I think they're two different things. What you're saying is you made a decision to deal with the exemption first rather than before checking the title. Checking the title is a matter of going down to the recorder's office and checking the title half a day, you know, at most, an hour or two. The – dealing with two – first one exemption motion and then another exemption motion was I don't know how much an attorney's fee is, but presumably in hours and time and money, a lot. Why is that a sensible way to proceed? It was sensible in the fact that the debtor contended that the property – even though she says title was messed up, the transcript – there's two discussions of trust and a trust in the 341A transcript. The debtor thinks she may be the trustee of a trust, but she doesn't – it's not the trust that the property was actually transferred to. And she never discloses the fact that the property was transferred. I need education on two details here. One is I don't know how people search titles in California. In Alaska, it's not practical to go to the clerk's office. What you do is you pay a title company and they give you a title report. And you can get a preliminary title report without getting title insurance. That's what you would do in this case. Is that what you do? How much does that cost? What we do in cases where there are no assets, which until the property was sold, there was not an asset, we – to the extent we can get a real estate agent that some trustees use in order to be the listing agent to sell the property, we see if they can obtain for no cost a copy of the title. It's not a cost. I mean, you get paid off the top. Right. But as far as – What I'm thinking is a preliminary title report in Alaska costs a couple hundred dollars. I don't know anything about how you do this in California. So I'm asking you. And it looks as though what you're saying is try to avoid the expense. I apologize, Your Honor. In bankruptcy cases in the Central District of California, we do not obtain preliminary title reports because they're typically around $700 or $800. And the estate does not advance that money, even though there is no money. But you spent more than $700 or $800 dealing with the exemptions. Excuse me? You must have spent more than $700 or $800 dealing with the exemptions. In the end of the day, yes. I mean, this really – In the beginning of the day, even as to the very first one. But, Your Honor, this was – this is – there's a difference. I mean, we expended the fees in generating the attorney time. But the cost of paying somebody to go get something when there's no money in the estate is a little different. You add the time, but not the out-of-pockets. Right. But your time costs a lot more than the out-of-pockets. It does, but – It's a little like avoiding Xeroxing by telling your associates to copy things. Okay. All right. So let's skip – and I know your time is over, but I have some questions about – let's assume that there was due diligence. So why – I mean, since we now all seem to agree that the estate had – that there was a revocable trust at the estate, therefore the property was in the estate, therefore, as I understand it, the exemption, if otherwise available, is available, why, if we get to the merits, isn't the bankruptcy appellate panel right anyway? No. And that's the reason that this matter has been appealed here. The reason the bankruptcy appellate panel is not correct is because 11 U.S.C. 522G provides that if the trustee has to recover property, the debtor is no longer entitled to that. But you didn't have to recover the property. It was already in the estate then, including the revocable authority. And that's why we're here, Your Honor. In a typical case, it may be easy. In this particular case, it wasn't. And the trustee actually had to commence the action against the Cinderella Trust to recover it. What's hard? I mean, revocable means I can take – I gave it to you, but I can take it back. I gave it to the trust, but I can take it back. What's hard? The reason it's hard is because title to the property was in the name of the Cinderella Trust. Sure, but it was – well, the review's up your time, so I should probably let you go. Well, if I'd like to just make this last point, and this really is the reason why we're here, because title was in the name of the Cinderella Trust, on October 28th, the bankruptcy court didn't allow us to proceed with the sale. We had to then get the property title to the property, transferred either back to the name of the debtor or the Chapter 7 trustee. Well, maybe because – maybe all you needed to do was ask trustee, do it. But you hadn't done it until October 28th. Ask trustee, revoke the trust. You hadn't done that. Instead, you were doing all these fancy proceedings. We didn't – okay. One of the reasons we did the fancy proceedings is because the debtor was not cooperative, and we had to get court authority to do it. I mean, it's evidenced by the fact that when the trustee of the Cinderella Trust did sign the deed and we recorded it, the debtor unilaterally on her own recorded a new document in the county of Los Angeles revoking that deed, saying that it's invalid and that the trustee had no authority to do so. And there was a bankruptcy court order authorizing him to do so and approving that deed. So, you know, every step we took, we kept being thwarted. And because we had to recover it and because we had to take those extraordinary steps, the Glass case, the Ninth Circuit Glass case, says that if we recover that property under 522G, the debtor is no longer entitled to that exemption. And based on that, and the transcript of the bankruptcy judge goes through for about two and a half pages explaining why the denial now on the reconsideration was appropriate. Counsel, the excerpts were too voluminous for me to use, so I just have an excerpt of excerpts, and I haven't been able to read everything the bankruptcy judge said. Did the bankruptcy judge misunderstand or not understand that the trust was revocable and the trustee could simply take back the property and sell it? Did you ask? Did he misunderstand something like that? As I stand here, Your Honor, I don't want to say one way or another because I don't know, but what I would refer Your Honor to is tab 22 of appellant's excerpts of record. Tab 22 is the transcript of the hearing on the reconsideration motion. And then I would also direct Your Honor to tab 29 of appellant's excerpt of record, which is the October 28th hearing where the court said that we couldn't proceed with the sale of the property. That's the one that I want. And now that you say that, it refreshes my recollection a little bit that at that time on the 28th, the bankruptcy trustee had not been provided a copy of the trust, and at that point did not know that it was a revocable trust. Now I get what's going on. Okay. Thank you, counsel. And at that hearing, Your Honor, you'll also see that the bankruptcy court requires that the debtor immediately turn over that trust. So you had not been provided with a copy of the trust and didn't know its terms? Correct, Your Honor. Thank you, counsel. Thank you for the extra time. Thank you. Ms. Kyle, you may approach the podium and speak. Is it possible that I can stay here? No. Your Honor, she has several money issues. I'm sorry? She does, in fact, have several money issues. All right. I didn't realize you were disabled. Go ahead and stay there. I'll come up there. No, that's not necessary. Go ahead and do whatever you need to do to be comfortable. I need to clarify that there are no disgorgement appeals coming in the future to you or to any other court. There is no other issues regarding compensation for the subject property. There are no adversarial proceedings pending. Mr. Friedman took the deposition of my physician, Harold Valerie. My physician told him that I have multiple herniated discs, that I have multiple pelvic tumors, and that my prolactin serum level is ten times the normal amount for a normal person, and that it is a probability that I have a brain tumor. He knows this because he took my doctor's deposition. He knows that my tumors causes me to have attacks where I'm unable to breathe well, talk, walk. I experience incapacitating, debilitating, death-defying, intolerable, wrenching pain. He knows that I have a paramedic report, several reports where strangers have found me unresponsive. An L.A. paramedic report, well, the last one is B.E. 578547, where paramedics found me unresponsive. When I have the attacks, my blood pressure is so high it becomes life-threatening. That report stated it was 228 over 112. When I asked Mr. Friedman if I could have $7,000 of my $125,000 that he owed me, he laughed at me, and he told me that he would never pay me any of my exemption. I have never appeared before the Ninth Circuit Court of Appeals before. I am not a lawyer, and I do not aspire to be. I only filed bankruptcy because I became very sick. I filed in 2001. They're trying to keep my homesteads. My case has been a travesty of justice. They're getting away with their crimes under the veil of authority. They treated me. They raped me. He judicially raped me. He judicially sodomized me. He's a bad, bad man, bad man. My case has been seared in flames of injustice. My husband will be 70 years old in three months on May 23rd. He was born 1936. We have been the victims of horrible, despicable crimes with that man right there. Bankruptcy was supposed to give Dennis a fresh start. It's been my crucifixion. He gave me five days to move from the house that I lived in. I'd really prefer if you addressed your remarks to us. Okay. He gave me five days to move from the house that I had lived in for 27 years since I was a little teenager. I lived there for 27 years. He said, we were now within five days, we will be shot dead by U.S. Marshals. He sent me a letter stating that. The record supports that at my 341A hearing meeting, I conveyed that property to the trust. And I am charging him, I'm sorry, I'm charging him with that knowledge. The court, the bankruptcy court only said that a bona fide dispute existed between the property. When the bankruptcy court told him that he went to my friend of 15 years who was the trustee, I get it confused, rather the trustor of the Cinderella Living Trust. And he forced, he told, he sent him a letter, he forced my friend to sign over the property to him. He told Mr. Miles that he couldn't tell anybody about this transaction. That the entire gang life, illegal back alley transfer was a secret from everybody. Then my friend executed a declaration three days later, stating that they forced him. They went to his house, they forced him. They took him to a notary. They forced him to give over my family's house. That was my family's house that had been in our family for over 100 years. 100 years. This firm has a practice of taking debtors exemptions. You can look at different cases. BAP CC001690, they tried to take another debtor's property. BLEF and DEBRA CC991360. This case, the BAP stated the trustee cites no authority for the proposition that 363F permits the sale of property free and clear of exemption claims. It is not clear to us how the trustee can make the leap from the Clark Trust ignoring beneficiaries without first containing consent of the other beneficiaries. I told them on June 19th in a transcript in my records that I do not own the property. They stole the property from the trust beyond the trustee's avoidance policy. It was created before she could take it back. Therefore, my siblings have a right. They did not cause bankruptcy. They have a right. They have a right to share. I don't understand. How can somebody take your house, your family's house? He doesn't want to give us a dime. After he kept the $261,000, my husband and I went to friends to borrow $8,000. This is in the records. It's God's truth. We borrowed $8,000 to find an apartment to get substitute housing to buy food. You want to know what they did? They forced us to give our loans over to them. They forced us after they kept the $261,000. They forced us to give them more money. How can they want to keep? What I want to say is my debts were only $40,000. They have not paid any credit to us. They have not paid my exemption. It is unreasonable, incomprehensible for anyone to pay a $228,000, $582.50 surcharge of $40,000 worth of debt. The BAP has caught him lying. They've said in their opinion, in my case, 041620, the unduly disputations, misleading and inaccurate representations made to us during oral argument by the Chapter 7 Trustees Council, Anthony Freeman, inspires no confidence in the reliability of anything else he has filed. Then they went and, him and I, they manufactured a fake court transcript and they added parties to the record that were not present in court. The BAP investigated and found that to be true. They said in their opinion, published opinion, published, if you look up my, this case is published, that the Chapter 7 trustee was content with the record until the end of oral argument. Later, the Chapter 7 trustee filed a transcript that was four to five pages long. We have considered the reformulation of what the Chapter 7 trustee wished had been said during oral argument and are not persuaded that we should revise our decision. My husband and I, who is 70, we have been held in vindictive, malicious, overzealous litigation for over five years now. There is no orders or appeals pending regarding this distortion. I beg you, I beg you, I beg you, please help me. God knows this is the truth, please, devil in my eyes knows. I beg you, I have suffered, I have suffered, God knows, I have suffered an injustice. I am suffocating, I am suffocating, please give me my life back, please, I beg you, I beg you, please. Please, these are monsters in disguise. Please issue an order reversing my whole situation. I need money. They took everything from me and more. They took the money I had for substitute housing and to buy food. I swear to God, they took everything we had. I'm not supposed to live like this. I beg you, please, issue an order making them pay what they did to me, please, with interest and without interest. I thank you. I thank you kindly. Thank you, Ms. Kyle. Unless my colleagues have questions, we will now submit Kyle v. Stey 0457195.
judges: Canby, Kleinfeld, Berzon